Good morning, everyone. First case this morning is number 09-1399, Paice v. Toyota Motor Company. Mr. Badenoch. Thank you, Your Honor. Good morning. May it please the Court. This case presents a critical legal question of how the district courts should set ongoing loyalties in a case where the patent is valid and infringed but no injunction has been granted under eBay. This presupposes that no one is disputing that the district court will take this step rather than leave it to the parties. There may be a dispute on that, Your Honor, but we submit that one or both parties is always going to put the whole case in issue, past damages and future. And we think the district court has to decide the whole case. Otherwise, we're going to have piecemeal litigation. I'm not sure I understand the answer to the question. Is it your view that the district court is compelled, if the district court decides an injunction is not warranted under the particular circumstances of the case, is he compelled then to award a reasonable loyalty? Yes, Your Honor, if it's been put in issue. Now, he can allow the parties time to try to negotiate their own loyalty as this court suggested and as, in fact, the district court did in this case. What do you mean by it's been put in issue? Because one or the other parties are always, the plaintiff usually is going to ask for injunctive relief going forward as well as relief for past damages. And that puts the question of the future remedy in issue, the equitable issue. If by some reason the plaintiff didn't ask, certainly I would think the defendant will file a declaratory judgment counterclaim and put that in issue. And therefore, the district court is faced with a situation that it has to decide the whole question. Is it correct in any case that in this case, the parties, based perhaps in part on the nature of the previous remand, have agreed that the district court will decide future damages and it's just a question of quantum? In this case, Your Honor, the court did, in fact, decide an ongoing loyalty. It was remanded and then, yes, the parties did try to negotiate. We couldn't agree and then there was a proceeding to decide the quantum of damages. And we believe what happened was the court applied the wrong legal framework when it did that. Okay, let's proceed to discuss that issue. Your Honor, we submit that the question here is whether or not ongoing loyalties in this kind of a situation should be compensation or whether they should be automatically punitive. And we would say they should be compensation. That's what the statute provides, compensation for use of the invention. So is your issue then that the amount that were awarded is not compensative? The amount that the district court awarded on remand is far more than compensation. The district court did not follow Georgia Pacific and look to see what reasonable businesses... What does that mean, follow Georgia Pacific? Georgia Pacific provides no rule. There are no such thing as follow Georgia Pacific. It's a laundry list of factors. What do you mean when you say follow Georgia Pacific? Sorry, I meant specifically in this case the hypothetical negotiation factor, which I think has a lot of precedent following it, where you have two businessmen sitting down, assuming the patent's valid and infringed, voluntarily trying to reach an agreement. Neither one's compelled or up against the wall, but from a business standpoint, they're trying to decide the value of the invention. But I thought your position had the caveat in it, which is that you have to start, leaving aside the willfulness aspect of this, that you also have to start with the jury award and its award of a reasonable royalty for past infringement. That's true, too, Your Honor. So how does that affect... It seemed to me you were suggesting that the district court is free to do a new analysis of all of the relevant economic factors under Georgia Pacific, but that would not be the case in this instance, according to what I understand your argument today. Your Honor, we're actually alleging three different errors here in what the district court did. One was that it assumed willfulness and enhancement. Two was it violated, we think, eBay the way it handled it. Three is, yes, it violated beacon theaters and cabinet vision by not accepting what the jury did as to what reasonable businessmen would arrive at in 2003 as fair value for the use of this patent. This court asked the district court to consider whether there was additional economic factors. Well, it seems to me to a certain extent the district court did that. I mean, he considered the price of gas at the time and how it had gone higher. He considered the new regulations that were in place that would lead to it. I'm having a hard time seeing what's wrong with that. Those are new and changed circumstances that would affect the value of the patent. No. Your Honor, the problem with it is that what was presented to the district court on those factors was basically the same evidence that was already presented to the jury. And the jury had ruled on that common question of what would be fair value based on that evidence. There's almost nothing that was really different. What the court then did, instead of starting with what the jury did and saying, okay, do additional economic factors change the amount? That's what the court was supposed to do. Instead, it threw the verdict out, started all over. Did this court in a model say that the jury verdict was a faulty premise? I'm sorry? Did this court in a model say that the jury verdict was a faulty premise? Yes, Your Honor. And the model was different for this reason, because there the question was really different. There, instead of looking at past damages, this court was looking at a situation where an injunction was warranted. And the question was, what was compensation during the stay? And the court distinguished our case on exactly that ground. So that really is a different situation. That makes it fundamentally different. The jury hasn't touched on that issue. Here, you have a common question that relates both to the legal issue of past damages and to the equitable issue of what should be an ongoing royalty. Tell us where the error lies, in your view, in the way it came out. Your Honor, the error lies primarily in that the district court created this so-called modified Georgia Pacific. Instead of reasonable business negotiators, basically the court said, OK, now we give all the cards to the plaintiff. The defendant will be at his mercy. The negotiators must... What's unreasonable about that in terms of the circumstance in which this post-verdict negotiation would have occurred? Because, Your Honor, under the statute, what is required is that if the plaintiff has a right to exclude, it's violated. They get compensation. They don't have an automatic right to an injunction. Therefore, we should not be put in the position where we are compelled to negotiate a license at whatever amount they want as if they did have an injunction. Well, is it your view that there's no change in the legal relationship of the parties post versus pre-verdict? No, Your Honor, there is a change. But in this case, it doesn't make a difference in the damages analysis. And the reason is not only was an injunction not warranted here, but you see the court found specifically that this plaintiff was not injured in any way other than loss of royalties. You could have non-practicing entities in a situation like that. Couldn't you reason that the jury verdict is the same patent, the same parties, the same product, a reasonable royalty that has been set and then argue under Lucent that you're required to give that a primary consideration? Yes, Your Honor. I think that's correct. And we do argue that on that point, the court was required to accept the evidence. The jury, after all, heard all this evidence about trying to use as a royalty base the entire hybrid drive train. Obviously, they didn't invent electric motors and planetary gears. It's a huge royalty, four times more than actual competitors pay each other for established hybrid portfolios. Yes, the jury heard that and rejected that. In fact, it decided fair value for the use of this invention was $25, and the nature of the use going forward is exactly the same. But, well, not exactly the same, because as the district court pointed out, that once you've got a jury verdict and an imposed reasonable royalty, the patentee is effectively precluded from entering into an exclusive license. So to that extent, that wasn't something that was considered by the jury in terms of past damages award, was it? That's correct. But, Your Honor, when the judge pointed that out, he actually found that this infringement did not interfere with PACE's licensing program. So you think that is a legitimate factor. It's just that there were insufficient facts here to support that, but that that would be, in another circumstance, might be a legitimate factor in terms of enhancing the award. Absolutely, Your Honor. Here's the point. I started to say a non-practicing entity, you see, may want to control the market itself, may want to exploit by exclusive license, may want to establish a business that has a right to do that. And if you have a plaintiff that was trying to do that, they would be injured in some way other than the failure to receive royalties. But that's not this case. What about if, hypothetically, you had a case where in the first instance before the jury there was a charge of willfulness and a finding of willfulness? And so the judge for past damages enhanced the damages threefold to account for past willfulness. Do you still think that the willful component should be off the table in terms of negotiating a future royalty? No, the judge could take that into account in going forward as to what would be a reasonable royalty going forward. However, and this is another point, the judge still has to separate the amount that is compensation and the amount that is enhancement for willfulness. So how can he take it into account? If your argument holds that willfulness is not a compensatory component but only a punitive component, then how would the district court legitimately not err if he considered the past willfulness finding? Well, he would indicate in his opinion in deciding what the royalty is, this much is for compensation. Because the infringement has been willful and is continuing to be willful if I allow it, this much is for willfulness. Under the Reed-Portek factors, this is why I enhance this much. And that, you see, is a reason alone why you have to remand this, Your Honor, because this court did not even separate or explain what he did. He simply worked willfulness into the equation in a general sort of way and said, look, we reject all of Toyota's evidence because they didn't assume willfulness and treble enhancement. In fact, more than treble, more than the statute even allows. It's four times. But he didn't explain, okay, this is the amount I find is reasonable compensation for the ongoing use of this invention. And this is the amount under Reed-Portek that I think is appropriate enhancement. Remember, this is a case where we had a good faith belief we didn't infringe. The jury found no willfulness. The jury found no literal infringement at all. We got hooked by two claims. So we know we have to pay for that. But under the statute, if they're not entitled to injunction and if they're not injured in any way other than loss of royalties, which is the case here, then that's what we should have to pay going forward. You're saying you're not a willful infringer if you're an authorized infringer, right? That's correct, Your Honor. The very same decision that said, okay, now you're valid and infringed, said you're authorized to go ahead so long as you pay. And of course we're willing to pay. That's fair. That's what they're entitled to for the infringement. So the relief that you're requesting is a remand with instructions essentially to reinstate the amount of the original jury verdict? Actually, Your Honor, a remand to consider under the proper legal framework, as we argue. Although if the court feels this has been litigated enough and we submit there's not sufficient evidence in the record to depart from the original $25, then yes, we would agree to reinstate it. Is there such a thing as litigated enough in our universe? It's a good suggestion, Your Honor, and we would accept the $25 remand. Thank you. Okay. Thank you. We'll save you a little time. Mr. Cordell. Thank you, Your Honor. May it please the Court, Ruffin, Cordell, Fish, and Richardson on behalf of Pace. I believe this appeal begins, as they all do, with a statement of review. And it seems that both parties are in agreement that this Court's precedent tells us that this is an equitable exercise by the District Court reviewed for abuse of discretion. That hasn't stopped the Court in rescuing it or loosening it, has it? That's correct, Your Honor. You're swimming upstream. What is the problem? How can Pace have argued for a 25% royalty on the overall profit margin of Toyota when the record shows no evidence that the overall profit margin is related to the claimed invention and the 25% rule of thumb is not a rule at all? It's illogical and uneconomic. There's about five questions there. If you can get any of them right, you have a chance. But I don't think you do. Well, Your Honor, I would respectfully disagree. Okay. Give me your answer. So point number one is that before the District Court and our expert began discussion of any fraction of the apportionment of the profit that Toyota enjoys, they went through specific factors, specific factors that this Court has approved in other contexts for past damages, and I understand we're in a new world of ongoing damages, but looked at the changed circumstances that I believe Your Honor put into the confrontation. Start with the overall profit margin of Toyota. How is that related to the claimed invention? It is related to the claimed invention in two ways. Number one, that is the only fact. Where does the record show it's related to the claimed invention? That the reason they're making a 9% profit is because of your invention. So there are two subsidiary issues, and I don't think the Court is focused on this, but let me just say it quickly, which is that the 9% number was the only number that Toyota made available. So that was the profit margin that we had to use because they made it. Is it Toyota's burden to prove your damages? It is not, Your Honor. Then you failed to get the adequate information you needed to set a royalty rate. That's not Toyota's fault. Go ahead. They did not, however, dispute that that 9% was essentially reflective. I believe their expert looked at some different profitability numbers, but he never came out and said there's absolutely no relationship between the two, and the District Court did diminish the royalty that was ultimately awarded because he credited some of the evidence that Toyota's expert offered about the increased inventory. But when you started a 25% rate and start diminishing, you know, if you start high enough, you can always justify coming back. Rescue.Net completely discredited that methodology, didn't it? I disagree. I disagree because in this case, this is distinct from Rescue.Net in that we did have specific evidence that linked the value of this patent and these inventions to the success of Toyota. There was specific evidence of that. Our technical expert, Dr. Nichols, testified about how critical reducing the current was to the overall fuel economy of the hybrid systems, and that overall fuel economy, everyone agrees, is the basic selling proposition of the accused devices. You're saying every person who bought this bought it because of your claimed invention. I will say this. Therefore, you get the entire profit margin of Toyota. You're saying nobody would have bought another car if there had not been infringement. Nobody would have bought a fuel-efficient Subaru or a fuel-efficient any other kind of Hyundai. I will say that there are alternatives that exist. Did you account for that in your infringement analysis? No. You say you get the entire profit margin with a 25% royalty rate. Where do you get a 25% royalty rate? Again, Your Honor, it doesn't come out of whole cloth. In this case— Yes, it does. The rule of 25% is out of whole cloth. It has nothing to do with economic reality. But in this case, the district court considered the fuel economy impact. He considered the CAFE standard impact. He considered the halo effect. He considered the ability for Toyota to project itself as a green company. He considered convoy sales. He considered the fact that this invention, through the mouths of our technical expert, this invention contributed exactly to Toyota's overall commercial success. That was specific evidence. It was specifically linked to— The one thing that he did say, the district judge did say, is that this is willfulness, and therefore he can seek a different royalty rate than what was established by the jury. That's the one point he made. How can it be willful if it's authorized? With all due respect, Your Honor, he didn't say that it was willful. What he said was it's a different analysis. He used the fact of the prior adjudication, the fact that Toyota was an adjudicated infringer for one purpose and one purpose only. I vehemently disagree with Toyota's statements about it factoring into the royalty rate. It did not. It did not. In fact, he used the fact of the prior adjudication to reduce the royalty rate, but he did use the fact of the prior adjudication to distinguish— Once judgment is entered, ongoing infringement by the adjudged infringer is willful. And he used that fact. He used that fact. How can it be willful if it's authorized? Well, it's not authorized in the sense that until he enters the license— The court authorized it. He will authorize it once he enters the license, and the entirety of the exercise is devoted to determining the level of the license. But what's important here is he used that fact for one purpose, which was to distinguish the past damages case from the prospective damages case, which this Court had already decided in a motto is appropriate, that the jury's verdict doesn't control the process. And that's the only purpose for which he used the fact of the prior adjudication. That's a very important point. He didn't enhance the damages contrary to what Mr. Badenow said. In fact, he reduced the damages. Wait, wait, wait. So is it your view—forget what the district court said. I understood it to be your argument that the willfulness component should be a significant factor in the hypothetical negotiations, that the legal landscape has changed. If there were no reasonable royalty, the infringer would be subject to potentially willfulness and enhancement. I mean, is that not your position? It is our position. It is our position that in the new hypothetical negotiation, that the actors have to always keep in mind their walk-away positions. And in the post-verdict phase, the post-judgment phase in this case, the walk-away position of Toyota, if they decide not to enter into an agreement, is that they will face an additional piece of litigation. And that's what the district court said, too. Correct. So I thought you were saying a few minutes ago that the district court didn't factor in the willfulness component in response to Judge Rader. And I thought clearly he did. I thought that was clearly your position. Well, again, Your Honor, it's part of the walk-away position, and it's part of what justifies the new analysis. So let me re-ask what Judge Rader asked. If you say it's part of the negotiation, why should it be part of the negotiation if we're dealing with a hypothetical negotiation in the context of authorized use as opposed to willful infringement? Because it presumes the outcome, and it doesn't take into account the respective legal decisions of the parties as they come to the negotiation. So when they come to the negotiation, there is no license. They're there to negotiate the license. They're there to reach agreement on the license. And in all negotiations, your walk-away position is what will happen to you if you fail to reach agreement. Well, except in Georgia-Pacific when we're talking about pre-verdict, the walk-away position is, the assumption is, the patent is valid and infringed. So the walk-away position is the same, right? Not quite, Your Honor, because the walk-away position in the pre-verdict case is that they will pay whatever damages are due in the case. And that would be the worst-case position for the party in the posture of Toyota. After the verdict, after the judgment in this case, that walk-away position has remarkably changed. What about in a case where there's a charge of willfulness in the pre-verdict state? I thought the Court's question was provocative. To tell you the truth, I haven't processed that one all the way through because I— Okay, well, let me move back to Judge Rader's initial question about this 25 percent and just the profit. Just on the calculation of the amount, the District Court also said, at least two or three times, he referenced that as sort of an economic analysis, and Toyota can always raise its prices anyway. That kind of seemed a little odd to me. I mean, you know, you could— so the sky's the limit in terms of what royalty can impose because, in theory, Toyota could raise its prices to $2 million a car. As a practical matter, of course they can't because of the competitive field. So the District Court, without analyzing the competition or the market, just said three different times, well, Toyota can always raise its prices. The District Court did take into account the unusual demand for these products and the fact that Toyota dealers of this evidence are actually conducting raffles in order to allocate these vehicles. So was there enough evidence for him to suggest that they can raise the cost of the vehicle for untold amounts and that that wouldn't have an impact on sales or competition? There was evidence, at least in the case below, that, for example, certain dealers were charging premiums of up to $5,000 for the infringement. But, see, the assumption in that argument is that you have a patent on all hybrid technology. Lower current technology was in the prior art. You have a narrow portion of that. It's not like you're responsible for everything happening in the hybrid industry and you get patent damages as if you had invented the whole field. You didn't. You have a narrow improvement, and the Court never takes that into consideration. He seems to be looking at fuel economy as if you're the only one responsible for lower fuel economy. You're not. You have a minor portion of a massive field. Your Honor, the Court did take into account specific statements from Toyota about this low current technology, about how it wasn't apparent to them, about how they couldn't come to... But lower current technology is in the prior art. Your claimed invention is a small improvement. Now, where do you prove that you're entitled to all profits on lower current technology when you didn't invent it? We never said that we were entitled to all the profits, Your Honor. Yet what you do, you say we get 25% of their overall profit margin. So what we have in the record... And then you come to this Court and you say, see, lower technology fuel was a justification for damages. You're not responsible for all the lower current technology. There was evidence in the record that did in fact support that point, that this notion of using low current, the I squared, the R losses... My point is you're not linking your damages to your claimed invention. You're trying to take credit for things you did not do. Well, I respectfully disagree, Your Honor. Our experts said that this particular development... If your expert tries to take credit for the entire Toyota profit margin and then say, well, and fuel, higher fuel prices justify this as well, you're saying we're responsible for all fuel technology. You're not. Fuel-saving technology... Again, my expert didn't say that. What my expert said was that... He is saying it implicitly. He at no point says, here's our claimed invention. It's a narrow improvement in the field of lower current technology. And now let's see what the value of that is vis-a-vis the entire field of fuel economy. He starts with, we're entitled to the whole field of fuel efficiency and now we'll take 25% of it, all of which has no basis in either patent law or economics. Well, so just to focus on the record for a moment, what he said was that this invention was something that no one had come to in the field of hybrid technology in particular. That Toyota found it hard to accept when it was first suggested and it took them a while to finally warm up to the idea, much in the way a secondary consideration of obviousness would be. And then it did, in fact, contribute to their success. And again, I would look at it in broader context. Toyota didn't present any opposite evidence to that, Your Honor. Well, let me ask you, how did this record differ from the one before the jury? I mean, the jury heard in essence the same argument, correct? And they awarded the $25 per vehicle. That leads us to the argument of whether or not that should indeed be the starting point or whether Pace can revisit that whole calculation on reasonable royalties. The jury was presented with a different analysis, so I disagree with my colleague, Mr. Badenow. The jury was presented with an analysis that began with the rates that Pace had been proposing to others in the field. Different from what? So you're suggesting that Pace put on a different economic analysis to justify damages pre-verdict versus post-verdict? Correct. So that would be point number one. Point number two is we have no evidence, no evidence whatsoever, of what the jury actually decided on the damages issue. Well, we have one piece of evidence, which is they awarded $25 per vehicle. Correct. But we don't know whether they used a Georgia-Pacific analysis. Our expert presented several different approaches, including taking a significant amount of money that Toyota is using to quantify the value of the hybrid drivetrain itself. And I won't speak the number, but it's an agreement between Toyota and Nissan, from early in the experience of the two companies, long before the technology was actually proven. And they used that value, our expert used that value, to suggest that a royalty rate would be appropriate. We don't know what the jury did, so it is an incorrect assumption that the hypothetical negotiation that the jury dealt with was even decided. We don't know that. So the hypothetical negotiation that occurs now, almost by necessity, has to recur. You can't simply presume that they used one method or another. And this Court's been very clear that the methodology used to calculate a reasonable royalty is something left to the discretion of the district court and varies from court to court, as the facts of a particular case would require. And so what we have is, for example, in the Smith-Klein-Helena case, this Court decided with approval the fact that there are different methods that are used and the precise methodology used for fixing a reasonable royalty is left to the discretion of the district court. And if I can just stress one additional point, and that is that there was specific evidence that linked this invention to the contribution that Toyota ultimately was able to obtain and utilize to great commercial success. And then our damages expert refers to that before ever fixing the royalty and uses those factors, those economic factors, to try to fix the level of damages. Okay. Thank you, Mr. Cardell. Mr. Badenoch. Thank you, Your Honor. I'll be brief. I have very little time. And I agree basically with the Court's analysis on what was wrong with, in fact, what the district court did. I do want to say just one thing quickly. On the actual nature of the invention that supposedly Toyota used, we were found to infringe by equivalence two claims. The claims that talk about this idea of high voltage, which you're correct, they didn't invent, and a maximum current, which they didn't invent. They didn't even infringe those claims. But the question of infringement is no longer before us, other than perhaps whether or not equivalency might have an effect on the royalty base. That's correct. And, of course, you're only responsible for the claimed invention and that claimed invention that you infringed, right? That's correct. So if you didn't infringe these other things, they're certainly not something you're responsible for in a royalty or any other way, right? That's correct, Your Honor. Thank you. We would agree with that. Although the statute says adequate to compensate, the district court did make a conscientious effort to consider where the compensation might arise. Yes, Your Honor, but where the district court went astray was to assume that as part of that analysis, in this case it's automatic that it ought to be willful, when, in fact, it was authorized. And it was not even infringement. The statute says you have to do something without authority in order to infringe. So going forward, we were not willful infringing. We had a good faith belief we were allowed to do what the court authorized us to do. And so to then take into account the notion that we're automatically willful, and not only that, that we're egregiously willful. Well, there wasn't a finding, but you can't say that the district court analysis in discussing generally the changed relationship of the parties was removed from reality. It seems to me he recognized the reality of this relationship, with, for example, Toyota saying we can easily avoid the patent entirely, except if it didn't happen. That's correct. He recognized there's a change in legal relationship because it's an adjudication. That part's correct. But in this case, it makes no difference to the analysis of the compensation because there's no willfulness, they're not entitled to an injunction, and more importantly, there may be some cases where a non-practicing entity doesn't get an injunction because of public interest or balance of hardship. They did not show that they were injured in any way other than the fact they lost non-exclusive royalties. They were out trying to license anyone who would pay the money. And so the court found that's the only injury. Their right to exclude was violated, but the only injury they suffered was that injury. And since that's the only injury they suffered, then when you ask the question, what are damages adequate to compensate for the infringement going forward, that's the answer. And the jury gave us the answer. Okay. Thank you. Thank you both. The case is taken under submission.